## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## (SOUTHERN DIVISION)

| | | |
|---|---|---|
| **QWENTEZ JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Civil Action Number** |
| | ) | |
| | ) | |
| **EQUIFAX INFORMATION** | ) | |
| **SERVICES, LLC; AND** | ) | |
| **TRANS UNION, LLC** | ) | _____ |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

COMES NOW the plaintiff, Qwentez Jones ("Plaintiff" or "Mr. Jones"), by and through his undersigned counsel, and with knowledge as to his own acts, upon information and belief and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §1681, *et seq.* ("Fair Credit Reporting Act" or "FCRA") against two nationwide reporting agencies, Equifax Information Services, LLC ("Equifax") and Trans Union, LLC ("Trans Union").

1

2.      Congress, when it enacted the FCRA in 1970, mandated the existence and use of reasonable procedures to assure the maximum accuracy of the personal and financial information compiled concerning consumers and sold to users by consumer reporting agencies ("CRAs").

3.      Identity theft is the fastest growing crime in the United States. Over 10 million consumers a year become victims of identity theft.

4.      On December 3, 2004, President George W. Bush signed into law the Fair and Accurate Credit Transactions Act ("FACTA").

> This legislation gives consumers unprecedented tools to fight identity theft and continued access to the most dynamic credit markets in the world. With a free credit report and powerful new tools to fight fraud, consumers have the ability to better protect themselves and their families.[1]

5.      In 2011, Alabama ranked number 15 for the incidence of identity theft nationally, according to the Federal Trade Commission.

6.      Despite federal law and Congressional mandates, identity theft remains a significant problem for consumers, including Mr. Jones.

7.      The sale of American's most private and sensitive personal and financial information is a multi-billion dollar industry for the CRAs.

---

[1] http://georgewbush-whitehouse.archives.gov/news/releases/2003/12/20031204-3.html as of June 24, 2012.

8. In 2011, Equifax reported earnings of $2 billion and a net profit of over $220 million.[2]

9. Trans Union reported over $1 billion in revenue and net income of $48.8 million in 2011.[3]

10. The instant lawsuit seeks compensatory, statutory and punitive damages, costs of suit and attorneys' fees for Mr. Jones, resulting from the CRA Defendants' failure to comply with the FCRA.

## JURISDICTION & VENUE

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, 15 U.S.C. §1681p.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b).

13. Plaintiff is an adult citizen of the State of Alabama and resides within this judicial district.  Plaintiff is a "consumer" as defined by 15 U.S.C. §1681a(c).

14. Equifax Information Services, LLC ("Equifax") is a Georgia corporation with its principal place of business in the state of Georgia.  Equifax does business in this judicial district.   Equifax outsources consumer disputes to vendor companies in the Philippines and India.  At all times relevant hereto, Equifax's

---

[2] http://news.equifax.com/index.php?s=18010&item=121322 as of June 24, 2012.
[3] http://www.transunion.com/docs/rev/aboutTransunion/investor-relations/Fiscal_2011_10-K.pdf as of June 24, 2012.

vendors acted as agents for Equifax.  Equifax is a CRA as defined by 15 U.S.C. 1681a(f).

15. Trans Union, LLC ("Trans Union") is a Delaware corporation with its principal place of business in the state of Illinois.  Trans Union does business in this judicial district.  Trans Union outsources consumer disputes to vendors in India.  At all times relevant hereto, Trans Union's vendor acted as its agent.  Trans Union is a CRA as defined by 15 U.S.C. 1681a(f).

16. Equifax and Trans Union are referred to collectively throughout the Complaint as the "CRA Defendants."

17. The CRA Defendants regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined by 15 U.S.C. §1681a(f) to third parties.

18. The CRA Defendants disburse consumer reports to third parties of contract for monetary compensation.

19. Specifically, the CRA Defendants sell "consumer reports" concerning individuals who apply for credit, including retail credit and mortgage, employment, housing and insurance.

## FACTUAL ALLEGATIONS

20. The plaintiff discovered he was a victim of identity theft in or around April 2011.

21.     The plaintiff reported the identity theft incident to law enforcement in April of 2011.

22.     The plaintiff requested an initial fraud alert on his credit files with the CRA Defendants.

23.     Trans Union acknowledged Plaintiff's fraud alert in writing.

24.     Equifax did not acknowledge Plaintiff's fraud alert.

25.     In January 2012, Plaintiff requested Equifax and Trans Union to place an extended fraud alert on his credit file and provide him with a free consumer disclosure (referred to throughout as a "credit report") due to fraud.

26.     Trans Union acknowledged the plaintiff's fraud alert request, but mischaracterized his request as a request for an initial fraud alert.  Further, Trans Union did not request additional documents from Plaintiff in support of his request.  Finally, Trans Union did not send the plaintiff his credit report.

27.     In or around February 2012, Equifax acknowledged the plaintiff's fraud alert request, but mischaracterized his request as a request for an initial fraud alert.  Further, Equifax provided the plaintiff with a copy of his credit report.

28.     In response to Equifax's correspondence, the plaintiff disputed entries on his credit report, including a collection account trade line – Credit Protection on behalf of Bright House.  Plaintiff also disputed four (4) inquiries: (1) Chase Bank USA;

(2) Gecrb/Amazon Plcc; (3) HSBC Bank; and (4) Southern Company. The collection account and inquiries are a result of fraud or identity theft.

29. Again, Plaintiff requested Equifax to provide him with a free credit report.

30. Plaintiff included copies of a police report and his Social Security card and driver's license with his February 2012 dispute letter to Equifax.

31. In March 2012, Equifax sent two letters to Plaintiff. In one letter Equifax said it was unable to locate the plaintiff's file and requested identifying information, such as a Social Security card and driver's license. The second letter, dated the same day, contradicted the other letter and stated:

> Equifax has added an extended fraud alert to your Equifax credit file. . . .
>
> You may request copies of your credit file beginning on the date shown on this letter.
>
> A copy of one of EACH of the categories below is needed in order to verify your identification and address.

32. Plaintiff already provided Equifax with the requested information on at least two occasions. Nonetheless, in March 2012, Plaintiff sent Equifax a second written dispute and included his identifying information, including a driver's license and Social Security card.

33. In response to Trans Union's February 2012 correspondence, Plaintiff mailed another request for his free credit report due to fraud or identity theft in March 2012 and included a copy of his driver's license and Social Security card.

34.     In or around April 2012, Trans Union added an extended fraud alert and informed Plaintiff that he was entitled to two (2) free credit reports in the next twelve months.  Further, by separate letter, Trans Union stated the documents supplied by Plaintiff were unacceptable and Trans Union did not provide Plaintiff with a copy of his credit report.

35.     In July 2012, Plaintiff requested his credit reports again from Trans Union and Equifax, in writing, and included supporting identification documents. Plaintiff also sent Equifax his third written dispute.

36.     Equifax acknowledged Plaintiff's request in July 2012, but stated, "Equifax was unable to locate a credit file." Equifax did not provide the plaintiff with his credit file or the results of the reinvestigation.

37.     Similarly, in a letter from Trans Union in July 2012, Trans Union acknowledged Plaintiff's request, but did not provide him with his credit report. Instead, Trans Union requested additional identifying information.

38.     For at least the fourth time, in writing, in September 2012, Plaintiff requested his free credit reports due to fraud or identity theft from Equifax and Trans Union.  Plaintiff included a copy of his Social Security card and a copy of his rental agreement in both letters.  Plaintiff also notified Trans Union that he had been turned down for housing and requested a report due to adverse action.

39. Further, for the third time, Plaintiff disputed the above-described incorrect entries to Equifax.

40. The CRA Defendants did not provide the plaintiff with his free credit reports.

41. Instead, Equifax requested additional information because "Equifax was unable to locate a credit file."

42. Trans Union requested additional information because the plaintiff's proof of address was unacceptable.

43. At all times relevant hereto, Equifax reported inaccurate information concerning Plaintiff and Plaintiff's credit worthiness to third parties. Specifically, Equifax reported information that did not belong to the plaintiff.

44. Based on the CRA Defendants' credit score models, such as VantageScore, the information contained in Mr. Jones' file negatively affects his credit score. In other words, incorrect consumer reports prepared by at least one of the CRA Defendants decreased Mr. Jones' credit score and increased the perceived risk to his creditors and insurers, potential and existing.

45. Upon information and belief, using the credit scoring model VantageScore, which is utilized by Equifax and Trans Union, the plaintiff's credit score is lower when the incorrect information is considered when calculating his credit score.

46.     More generally, the information reflects negatively on Plaintiff, his financial responsibility as a debtor, his credit worthiness and inaccurately depicts Plaintiff.

47.     Equifax has reported inaccurate information through the issuance of false and inaccurate credit information and consumer reports that the CRA Defendants disseminated to persons, as that term is contemplated by 15 U.S.C. §1681a(b).

48.     Plaintiff disputed inaccurate information to Equifax.

49.     Equifax did not request additional information from the plaintiff to investigate his disputes.

50.     Equifax did not contact third parties that would have relevant information concerning the disputed information.

51.     Equifax did not forward relevant information concerning Plaintiff's dispute, including but not limited to corroborating documents supplied by Mr. Jones' to the person or persons supplying the incorrect information.

52.     More specifically, other than an Automated Consumer Dispute Verification ("ACDV"), Equifax did not provide users, including data furnishers such as creditors or debt collectors, with personal identifying documents supplied by Mr. Jones' in support of his disputes.

53.     Equifax failed to perform reasonable investigations of Mr. Jones' disputes.

54.     Equifax failed to remove inaccurate information from Mr. Jones' file.

55. As of today's date, Equifax continues to report incorrect information concerning the plaintiff.

56. At all times relevant hereto, the defendants were acting through their agents, servants and/or employees who were acting within the scope of their employment or agency, or both, and under the direct supervision of the defendants.

57. The defendants' unlawful conduct proximately caused Plaintiff's actual damages, including but not limited to: harm to credit reputation; declination of credit or housing, or both; emotional distress and mental anguish; out-of-pocket expenses; and time.

## COUNT ONE – VIOLATION OF THE FAIR CREDIT REPORTING ACT

58. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

59. Equifax is liable to Plaintiff for willfully and negligently failing to comply with the Fair Credit Reporting Act 15 U.S.C. §1681i, pursuant to 15 U.S.C. §§1681n and o.

60. Equifax violated 15 U.S.C. 1681i on multiple occasions by failing to: delete inaccurate information in Plaintiff's credit file after receiving actual notice of such inaccuracies; conduct a lawful investigation; forward all relevant information to the furnisher of the inaccurate information; maintain reasonable procedures with which to filter and verify disputed information in the plaintiff's credit file; and by

relying upon verification from a source the CRA Defendants have reason to know is unreliable.

61. Equifax's conduct was a substantial factor in directly and proximately causing Plaintiff's injuries and damages as outlined above.

62. Equifax is liable to Plaintiff for the full amount of statutory, actual and punitive damages, plus attorneys' fees and costs.

63. Wherefore, Plaintiff seeks judgment in his favor against Equifax, based on the following relief requested:

    (a) Actual damages;

    (b) Statutory damages;

    (c) Punitive Damages;

    (d) Costs and reasonable attorneys' fees; and

    (e) Such other and further relief as may be necessary, just and proper.

**COUNT TWO – VIOLATION OF THE FAIR CREDIT REPORTING ACT**

64. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

65. CRA Defendants are liable to Plaintiff for willfully and negligently failing to comply with the Fair Credit Reporting Act 15 U.S.C. §1681e, pursuant to 15 U.S.C. §§1681n and o.

66. Said defendants violated 15 U.S.C. §1681e(b) by failing to establish or follow reasonable procedures to assure the maximum accuracy in the preparation of the credit report and credit files they published and maintained concerning Plaintiff.

67. CRA Defendants' conduct was a substantial factor in directly and proximately causing Plaintiff's injuries and damages as outlined above.

68. Said defendants are liable to Plaintiff for the full amount of statutory, actual and punitive damages, plus attorneys' fees and costs.

69. Wherefore, Plaintiff seeks judgment in his favor against the CRA Defendants, based on the following relief requested:

    (a)    Actual damages;

    (b)    Statutory damages;

    (c)    Punitive Damages;

    (d)    Costs and reasonable attorneys' fees; and

    (e)    Such other and further relief as may be necessary, just and proper.

## COUNT THREE – VIOLATION OF THE FAIR CREDIT REPORTING ACT

70. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

71. The CRA Defendants are liable to Plaintiff for willfully and negligently failing to comply with the Fair Credit Reporting Act 15 U.S.C. §1681c-1, pursuant to 15 U.S.C. §1681n and o.

72. At all times relevant hereto, Plaintiff requested and the CRA Defendants included a fraud alert in his file.

73. Plaintiff requested his free consumer disclosure because of fraud or identity theft, or both, from Equifax and Trans Union.

74. Plaintiff provided the CRA Defendants with proof of his identification.

75. The CRA Defendants did not send Plaintiff his consumer disclosure within three (3) business days of receipt of each of his requests for the disclosure.

76. Wherefore, Plaintiff seeks judgment in his favor against the CRA Defendants based on the following relief requested:

    (a)    Actual damages;

    (b)    Statutory damages;

    (c)    Punitive Damages;

    (d)    Costs and reasonable attorneys' fees; and

(e)    Such other and further relief as may be necessary, just and proper.

**COUNT FOUR – VIOLATION OF THE FAIR CREDIT REPORTING ACT**

77. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

78. Equifax is liable to Plaintiff for willfully and negligently failing to comply with the Fair Credit Reporting Act 15 U.S.C. §1681c-2, pursuant to 15 U.S.C. § 1681n and o.

79. Equifax did not block the disputed information from appearing in Plaintiff's file within four (4) business days of receipt of Plaintiff's proof of identification, a copy of an identity theft report, the disputed information and a statement from Plaintiff that the items did not concern a transaction by the plaintiff.

80. Equifax did not notify the furnisher of the disputed information in compliance with 15 U.S.C. § 1681c-2(b).

81. Alternatively, Equifax notified the furnisher of the disputed information, but did not notify the furnisher that: the disputed information may be the result of identity theft; an identity theft report has been filed; Plaintiff has requested a block; or the effective dates of the block.

82. Equifax did not notify the plaintiff that his request to block the disputed information was declined.

83. Equifax's conduct was a substantial factor in directly and proximately causing Plaintiff's injuries and actual damages as outlined above.

84. Equifax is liable to Plaintiff for the full amount of statutory, actual and punitive damages, plus attorneys' fees and costs.

85.     Wherefore, Plaintiff seeks judgment in his favor against the CRA Defendants, based on the following relief requested:

    (a)     Actual damages;

    (b)     Statutory damages;

    (c)     Punitive Damages;

    (d)     Costs and reasonable attorneys' fees; and

    (e)     Such other and further relief as may be necessary, just and proper.

## COUNT FIVE – VIOLATION OF THE FAIR CREDIT REPORTING ACT

86.     Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

87.     Trans Union is liable to Plaintiff for willfully and negligently failing to comply with the Fair Credit Reporting Act 15 U.S.C. §§1681g and j, pursuant to 15 U.S.C. § 1681n and o.

88.     Trans Union failed and/or refused to provide Plaintiff with a free consumer disclosure due to adverse action within fifteen (15) days of receipt of Plaintiff's request.

89.     Trans Union's conduct was a substantial factor in directly and proximately causing Plaintiff's injuries and actual damages as outlined above.

90. Trans Union is liable to Plaintiff for the full amount of statutory, actual and punitive damages, plus attorneys' fees and costs.

91. Wherefore, Plaintiff seeks judgment in his favor against the CRA Defendants, based on the following relief requested:

> (a) Actual damages;
>
> (b) Statutory damages;
>
> (c) Punitive Damages;
>
> (d) Costs and reasonable attorneys' fees; and
>
> (e) Such other and further relief as may be necessary, just and proper.

## JURY TRIAL DEMANDED

92. Plaintiff demands trial by jury on all issues so triable.

> Respectfully submitted,
>
> **s/ Micah S. Adkins**
> Micah S. Adkins (ASB-8639-I48A)
> **BURKE, HARVEY & FRANKOWSKI, LLC**
> 2151 Highland Avenue, Suite 120
> Birmingham, AL  35205
> Telephone:  205.747.1907
> Facsimile:  205.930.9054
> Email:        madkins@bhflegal.com

**PLAINTIFF WILL SERVE DEFENDANTS BY CERTIFIED MAIL AT:**

Equifax Information Services, LLC
c/o CSC Lawyers Incorporating Services, Inc.
150 South Perry Street
Montgomery, Alabama 36104

Trans Union, LLC
c/o Prentice Hall Corporation System, Inc.
150 South Perry Street
Montgomery, Alabama 36104